UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EDN GLOBAL, INC. d/b/a EDN COMMUNICATION and JEROME EDMONDSON,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T, INC., et al.,<br><br>Defendants. | CIVIL ACTION NO.<br>1:22-CV-02981-JPB |

## ORDER

This matter is before the Court on EDN Global, Inc. and Jerome Edmondson's (collectively, "Plaintiffs") Motion to Remand to State Court [Doc. 5] and AT&T, Inc., AT&T Mobility Services LLC ("Mobility"), Steve Driscoll, Doug Clark and Christopher Sambar's (collectively, "Defendants") Motion to Transfer Venue [Doc. 9]. This Court finds as follows:

## BACKGROUND

On March 18, 2021, Plaintiffs filed a complaint ("the First Action") in the Superior Court of DeKalb County against AT&T, Inc. In the First Action, Plaintiffs asserted two claims: (1) breach of contract and (2) misappropriation of trade secrets. The First Action involved AT&T's alleged breach of the AT&T

Alliance Program Agreement ("the Program Agreement"), into which Plaintiffs and AT&T entered in January 2018.  The Program Agreement contained a forum-selection clause that stated that litigation arising out of the Program Agreement must be commenced in either a state or federal court located in Texas.

AT&T removed the First Action to this Court on April 13, 2021, asserting diversity jurisdiction.  See EDN Global v. AT&T, No. 1:21-CV-01463 (N.D. Ga. Apr. 13, 2021).  Thereafter, on April 20, 2021, AT&T filed a Motion to Transfer Case to the United States District Court for the Northern District of Texas.  In response to that motion, Plaintiffs moved to remand the case to the Superior Court of DeKalb County.  After fully considering the parties' arguments, the Court denied Plaintiffs' request to remand the case because the parties were diverse and the amount in controversy exceeded $75,000.  EDN Global v. AT&T, No. 1:21-CV-01463, slip op. at 3 (N.D. Ga. June 29, 2021).  The Court also granted AT&T's Motion to Transfer.  Id. at 5.  After the case was transferred to Texas, Plaintiffs voluntarily dismissed the First Action.

On June 16, 2022, Plaintiffs filed another complaint ("the Second Action"). In the Second Action, which was filed in Fulton County Superior Court, Plaintiffs added several new defendants and asserted sixteen causes of action:  (1) tortious interference with contract; (2) tortious interference with business relations; (3)

2

fraud; (4) theft of trade secrets; (5) theft by deception; (6) theft by taking; (7) conversion; (8) violation of the Georgia RICO Act; (9) breach of fiduciary duty; (10) breach of confidential relationship; (11) aiding and abetting breach of fiduciary duty; (12) civil conspiracy; (13) trespass; (14) intentional infliction of emotional distress; (15) unfair competition; and (16) surprise. [Doc. 1-2]. On July 27, 2022, Defendants removed the Second Action to this Court. [Doc. 1]. In their Notice of Removal, Defendants conceded that two of the defendants—Mobility and Driscoll—were not diverse parties. Defendants asserted, however, that removal was nevertheless proper because Plaintiffs fraudulently joined the non-diverse defendants. Notably, Plaintiffs' Second Action includes the same factual allegations as the First Action but omits almost all references to the Program Agreement,[1] including its forum-selection clause.

Plaintiffs filed a Motion to Remand to State Court on August 19, 2022. [Doc. 5]. On September 6, 2022, Defendants filed a Motion to Transfer Venue. [Doc. 9]. The motions are now ripe for review.

---

[1] Instead of admitting that the parties entered into a contract (i.e., the Program Agreement), Plaintiffs state that the parties entered into a "joint venture." The Program Agreement and the supposed joint venture appear to be the same agreement between the parties.

3

## ANALYSIS

A.  **Plaintiffs' Motion to Remand to State Court**

Federal courts are courts of limited jurisdiction.  Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).  As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

In this case, Defendants assert that the Court has the power to hear this case pursuant to its diversity jurisdiction.  Federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states."  28 U.S.C. § 1332(a).

As a general rule, in cases where an action is removed based on diversity jurisdiction, remand is required if there is not complete diversity between the parties.  Illoominate Media, Inc. v. CAIR Fla., Inc., 841 F. App'x 132, 134 (11th Cir. 2020).  An exception to this general rule exists, however, "if the plaintiff fraudulently joins a non-diverse defendant to defeat complete diversity."  Id.  A removing party can establish fraudulent joinder in one of two different ways:  (1) by proving that "there is no possibility that the plaintiff can prove a cause of action against" the non-diverse defendant or (2) by proving that "there is an outright fraud

4

in the plaintiff's pleading of jurisdictional facts." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  Significantly, "[t]he burden of establishing fraudulent joinder is a heavy one." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).  Indeed, "[w]here a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." Id.

In deciding whether a party has been fraudulently joined, a court is permitted to consider a plaintiff's pleadings and "any affidavits or transcripts submitted by the parties." Illoominate Media, 841 F. App'x at 135.  Factual allegations must be evaluated "in the light most favorable to the plaintiff." Pacheco de Perez, 139 F.3d at 1380.

Defendants contend that there is no possibility that Plaintiffs can prove a cause of action against either Mobility or Driscoll—the non-diverse defendants. Defendants assert that the claims against Mobility fail because they are premised on a joint venture theory.  As to the claims asserted against Driscoll, Defendants contend that those claims fail because Driscoll's actions were taken for the benefit

of AT&T as part of a business agreement, not for Driscoll's personal benefit as alleged in the complaint.[2]

The Court will begin by analyzing whether Defendants have met their burden to show that Mobility was fraudulently joined. In the complaint, Plaintiffs allege that they were "joint venture partners" with Mobility and AT&T Global.[3] According to Plaintiffs, the joint venture was formed "in or around January 2018" to generate revenue for the implementation of FirstNet, a product owned by AT&T. [Doc. 1-2, p. 7]. In essence, Plaintiffs assert that Mobility breached the joint venture agreement. Significantly, Plaintiffs never dispute that this "joint venture" was governed by an express contract, the Program Agreement.[4]

The propriety of Mobility's joinder hinges upon Plaintiffs' ability, as a matter of law, to show that they entered into a joint venture agreement with Mobility. Plaintiffs have not plausibly alleged a joint venture for several reasons. First, Plaintiffs only offer conclusory allegations that they entered into a joint

---

[2] Defendants also argue that the tort claims are barred by the economic loss rule; the intentional infliction of emotional distress claim is barred by the statute of limitations; and the trade secrets claim, which preempts the tort claims, fails to state a claim. Because the Court finds Defendants' other arguments compelling, these particular arguments will not be addressed further.
[3] AT&T Global is not a named party.
[4] While Plaintiffs did counter some of Defendants' fraudulent joinder arguments, Plaintiffs did not address whether claims premised on a joint venture theory were viable.

6

venture with Mobility. This is problematic because whether a joint venture exists is a legal conclusion and "merely calling the relationship a joint venture or a partnership does not make it so." Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1249 (11th Cir. 2007). To show that recovery is possible against Mobility under a joint venture theory, in addition to stating the legal conclusion that Mobility was part of the joint venture, Plaintiffs "needed to also provide *factual allegations* to show that it was possible to make out their claims." Illoominate Media, 841 F. App'x at 135. "That link is missing here." Id. Indeed, Plaintiffs provide no facts that the parties split the profits of their business endeavor or had equal right to control the business relationship, which is required for the formation of a joint venture.[5]

Even if this Court were to find that Plaintiffs set forth enough facts to show the existence of a joint venture, liability premised on this particular joint venture is not substantiable here. Under Georgia law, "[t]here cannot be an express *and* implied contract for the same thing existing at the same time between the same parties." Ga. Real Estate Props., Inc. v. Lindwall, 692 S.E.2d 690, 693 (Ga. Ct.

---

[5] "Factors that indicate the existence of a partnership include a common enterprise, the sharing of risk, the sharing of expenses, the sharing of profits and losses, a joint right of control over the business, and a joint ownership of capital." Jerry Dickerson Presents, Inc. v. Concert S. Chastain Promotions, 579 S.E.2d 761, 768 (Ga. Ct. App. 2003).

App. 2010) (emphasis added).  In other words, where there exists an express agreement, courts will not imply a contract covering the same subject matter.  Id. Because there is an express agreement (i.e., the Program Agreement) that covers the same subject matter as the joint venture, Plaintiffs are precluded from recovering on any implied contract.  In sum, because Plaintiffs have not shown that a joint venture existed separate and apart from the Program Agreement and because a party cannot recover on an implied contract when an express contract exists, Defendants have met their burden to show that no court would find Mobility liable for any of the wrongful acts Plaintiffs allege.

The Court will next analyze whether Defendants have met their burden to show that Driscoll was fraudulently joined.  As previously stated, Defendants assert that Driscoll is not a proper party because the entirety of his actions were taken for the benefit of AT&T as part of a business agreement, not for his own personal benefit.  Defendants buttress this assertion by providing Driscoll's affidavit, in which he "unequivocally" denies that he acted for his own personal gain and confirms that each of his alleged actions occurred during the course of and within the scope of work done on behalf of AT&T.  [Doc. 8-1, p. 4].  Plaintiffs do not contest the affidavit.  Instead, they simply rely on the portion of their complaint where they allege that Driscoll acted outside the scope of his

employment and acted for his own personal reasons.  As already stated above, this Court is permitted to rely on affidavits in resolving the issue of whether a defendant was fraudulently joined.  Significantly, "where the plaintiffs do not dispute the defendant's affidavits, [as is the case here,] there is no question of fact for the court to resolve in plaintiff's favor."  Illoominate Media, 841 F. App'x at 135-36.  Ultimately, Driscoll's affidavit is uncontroverted, and therefore the Court finds that Defendants have met their burden to show that no court would find Driscoll liable for any of the wrongful acts that Plaintiffs allege.

As explained in the analysis above, the Court finds that Defendants have met their burden to show that Plaintiffs fraudulently joined Mobility and Driscoll.  The Court is thus satisfied that it can exercise diversity jurisdiction in this case.  Accordingly, Plaintiffs' Motion to Remand [Doc. 5] is **DENIED**.

**B.      Defendants' Motion to Transfer Venue**

Defendants have asked this Court to transfer this matter to the United States District Court for the Northern District of Texas.  Defendants assert that transfer is appropriate because the Program Agreement contains a valid forum-selection clause.  Plaintiffs do not dispute that their claims are subject to the forum-selection clause.  Instead, they argue that the forum-selection clause is invalid.

Motions to transfer are governed by 28 U.S.C. § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  With certain adjustments, § 1404(a) is the proper vehicle to enforce a forum-selection clause.  Hisey v. Qualtek USA, LLC, 753 F. App'x 698, 703 (11th Cir. 2018).

As a general rule, in cases not involving a forum-selection clause, "a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations."  Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 62 (2013).  This means that "the district court [should] weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  Id. at 62-63 (quoting 28 U.S.C. § 1404(a)).

However, when the parties' contract contains a valid forum-selection clause, the district court must adjust its usual § 1404(a) analysis in the following three ways:  (1) the plaintiff's choice of forum merits no weight and the party denying the forum-selection clause bears the burden of establishing that transfer to the

forum for which the parties bargained is unwarranted; (2) the court is limited to considering the public interest, not the parties' private interests; and (3) when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. Id. at 63-65.

Importantly, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. at 59. Indeed, the Eleventh Circuit Court of Appeals has noted that "an enforceable forum-selection clause carries near-determinative weight" in the § 1404(a) analysis. GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1028 (11th Cir. 2014).

1. Validity of Forum-Selection Clause

Before conducting the § 1404 analysis explained above, the Court must first address whether the forum-selection clause is valid. "Forum[-]selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009). A forum-selection clause is unenforceable when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its

day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." Id.

In this case, Plaintiffs argue that the forum-selection clause is invalid because they would be deprived of their day in court and the chosen law would deprive them of a remedy. The Court disagrees.

Plaintiffs contend that they will be deprived of their day in court because Defendants will move to dismiss some of the defendants for lack of personal jurisdiction if this matter is transferred to Texas.[6] There are currently five defendants in this case. Three of these defendants (AT&T, Inc., Sambar and Clark) are Texas residents. Defendants have already confirmed that they will not move to dismiss AT&T, Inc. and Sambar on personal jurisdiction grounds if the matter is transferred to Texas. [Doc. 18, p. 3]. Given that Clark is also a Texas resident, it is unlikely that a motion to dismiss based on personal jurisdiction would be successful. As to the Georgia defendants, the Court is not convinced that

---

[6] It is not clear to the Court which defendants Plaintiffs think will be dismissed on personal jurisdiction grounds. In the briefing, Plaintiffs assert that if the matter is transferred to Texas, Defendants will motion the Texas courts to dismiss AT&T, Inc. and Sambar. [Doc. 17, p. 6]. Later, Plaintiffs assert that "Defendants will turn around and make the exact same personal jurisdiction arguments in the Texas courts as it is using in its current motion . . . regarding the [other defendants]." Id.

Defendants could successfully move for their dismissal on personal jurisdictional grounds since the Georgia defendants are voluntarily availing themselves of jurisdiction in Texas by requesting the transfer to that court.  See A.S. Int'l Corp. v. Salem Carpet Mills, Inc., 441 F. Supp. 125, 127 (N.D. Ga. 1977) (determining that a defendant was estopped from challenging personal jurisdiction where the matter was transferred to Georgia at the express request of the defendant); see also Epperson v. Ent. Express, Inc., 338 F. Supp. 2d 328, 334 (D. Conn. 2004) (holding that a defendant forfeited his personal jurisdiction defense by consenting to a transfer without informing the court of his intention to assert a lack of personal jurisdiction defense upon transfer).  Because dismissal of any of the defendants on personal jurisdiction grounds is remote, the Court finds that Plaintiffs have not shown that enforcement of the forum-selection clause will deprive them of their day in court.

Plaintiffs also argue that moving the case to Texas would deprive them of a remedy because Plaintiffs bring claims under the Georgia Trade Secrets Act and Georgia RICO.  Under the third factor, a forum-selection clause will not be enforced if "the chosen law would deprive the plaintiff of a remedy."  Krenkel, 579 F.3d at 1281.  The Program Agreement in this case contains a choice-of-law clause stating that all disputes arising out of the Program Agreement are governed by

Texas law. "Regardless of whether this action is litigated in a courthouse in [Texas] or [Georgia], the court will apply [Texas] law . . . ." Rucker v. Oasis Legal Fin., LLC, 632 F.3d 1231, 1237 (11th Cir. 2011). "In other words, the remedy will be determined under the same set of rules no matter where the case is heard." Id. This factor thus does not warrant non-enforcement of the forum-selection clause.[7]

Although not one of the grounds listed above, Plaintiffs also argue that the forum-selection clause is invalid because the entire Program Agreement lacked mutuality. As a general rule, a forum-selection clause is not "automatically rendered unenforceable if one of the parties claims that the contract of which it is part is void or voidable due to fraud, illegality, etc." AFC Franchising, LLC v. Purugganan, 43 F.4th 1285, 1293 (11th Cir. 2022). This is the rule because "[a] forum[-]selection clause is viewed as a separate contract that is severable from the agreement in which it is contained." Rucker, 632 F.3d at 1237 (rejecting argument that forum-selection clause was invalid because it was included in a void contract). Because a lack of mutuality would not render the forum-selection clause unenforceable, this Court finds that Plaintiffs' argument is without merit.

---

[7] The Court will also note that Texas has a RICO statute as well as a trade secret statute. Plaintiffs have failed to demonstrate that the remedies provided by those statutes are so inadequate that enforcement of the forum-selection clause would be fundamentally unfair.

14

At bottom, Plaintiffs have not met their burden to show that the forum-selection clause is invalid.  In other words, Plaintiffs have not made the strong showing that enforcement of the forum-selection clause will deprive them of their day in court or deprive them of a remedy.

2. Modified § 1404(a) Analysis

Because the forum-selection clause at issue is valid, this Court must now perform the modified *forum non conveniens* analysis outlined previously.  In conducting this analysis, Plaintiffs—as the parties acting in violation of the forum-selection clause—"must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer."  Atl. Marine, 571 U.S. at 67.  The public-interest factors include "the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  Id. at 62 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)).  Significantly, public interest factors rarely defeat a transfer motion.  Id. at 64.

Plaintiffs have not argued that any of the specific public interest factors enumerated above overwhelmingly disfavor a transfer.  As such, Plaintiffs have

failed to meet their burden, and the Court will enforce the forum-selection clause. The Motion to Transfer [Doc. 9] is thus **GRANTED**.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand to State Court [Doc. 5] is **DENIED**, and Defendants' Motion to Transfer Venue [Doc. 9] is **GRANTED**.  This matter is hereby **TRANSFERRED** to the United States District Court for the Northern District of Texas.

**SO ORDERED** this 14th day of February, 2023.

_____
J. P. BOULEE
United States District Judge